UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ X
                             :

UNITED STATES OF AMERICA      :     **SEALED INDICTMENT**

        - v. -            :     22 Cr. 390

                             :

GLENN GRIFFIN, and           :
ROBERT DYCKMAN,
                             :

       Defendants.        :

                             :

------------------------------ X

## COUNT ONE
### (Conspiracy to Pay and Receive Bribes and Gratuities: Illegal Dumping Scheme)

The Grand Jury charges:

### The Defendants and the Arlo Lane Facility

1.  GLENN GRIFFIN, the defendant, is the owner, president, and principal of Griffin's Landscaping Corporation ("Griffin's Landscaping") and Hilltop Nursery & Garden Center ("Hilltop," collectively with Griffin's Landscaping, "Griffin's Companies"). Griffin's Landscaping is based in Peekskill, New York, and is a full-service commercial and residential landscaping company providing a variety of construction, removal, landscaping, and masonry services. Hilltop is based in Croton-on-Hudson, New York, and is a purveyor of gardening supplies, trees, shrubs, soil, and mulch. Griffin's Companies have held a variety of municipal contracts with the Town of Cortlandt Manor, New York, the village

of Croton-on-Hudson, New York, the hamlet of Verplanck, New York, and New York City.

2.    ROBERT DYCKMAN, the defendant, was a Town of Cortlandt employee for over 25 years until his October 2019 departure. At the time of his departure, DYCKMAN was an Assistant General Foreman employed by the Town of Cortlandt, a position he had held for over seven years, in which he supervised several dozen Town of Cortlandt employees, drivers, and laborers. In DYCKMAN's role for the Town of Cortlandt, he was responsible for overseeing, among other services, road maintenance, paving, snow plowing, catch basin drainage repair and maintenance, sweeping, and tree work.

3.    Arlo Lane is a Town of Cortlandt facility within the purview of ROBERT DYCKMAN, the defendant. Among other functions, Arlo Lane stores Town of Cortlandt equipment, machinery, supplies, and materials, such as trucks, loaders, screeners, manhole covers, catch-basin equipment, soil, and bins. Arlo Lane includes a large salt dome with a large pile of salt. Vendors and public employees were authorized to deposit and store at Arlo Lane materials originating from Town of Cortlandt projects, such as leaves removed during Town of Cortlandt catch-basin repairs. But without any connection to authorized Town of Cortlandt projects, materials from private projects or public

2

projects not connected to the Town of Cortlandt were not authorized to be deposited and stored at Arlo Lane. Among the work Griffin's Companies performed for the Town of Cortlandt included removing and hauling away piles of materials that had accumulated at Arlo Lane.

## Overview of the Conspiracy

4.     Beginning in at least in or about 2018, up to and including at least in or about February 2020, GLENN GRIFFIN, and ROBERT DYCKMAN, the defendants, and others, engaged in an unauthorized dumping scheme. In the unauthorized dumping scheme, typically on Saturdays or after normal working hours, in exchange for personal and financial benefits, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump, in total, hundreds of loads of unauthorized materials. The unauthorized dumped materials did not originate from Town of Cortlandt projects, such as leaves from catch-basin repairs; instead, they came from unconnected, non-Cortlandt projects of GRIFFIN or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction. The unauthorized dumped materials include thick concrete, cement with rebar, tiles, bricks, large rocks, and soil. Based on estimates provided by third-party vendors, the Town of Cortlandt estimates that its

3

remediation efforts to remove the unauthorized dumped materials from Arlo Lane will cost anywhere from approximately $600,000 to at least $1.5 million. GRIFFIN benefited from the scheme by, among other ways, having a free, nearby location to dump the truck loads of unauthorized materials and, on top of those benefits, receiving payments from the Town of Cortlandt for removing and hauling away some of the very materials that he had dumped there without authorization.

5. To carry out the scheme, ROBERT DYCKMAN, the defendant, among other actions: (a) ensured that GLENN GRIFFIN, the defendant, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, could enter Arlo Lane; (b) messaged and called, using his Town of Cortlandt cell phone, GRIFFIN, to facilitate the unauthorized dumping; (c) attempted to clear senior Town of Cortlandt management from Arlo Lane around the time of the unauthorized dumping in order to conceal it; (d) personally moved the piles of unauthorized dumped materials to conceal the unauthorized dumping; (e) directed certain subordinate Town of Cortlandt workers to assist in DYCKMAN's efforts to carry out and conceal the unauthorized dumping; and, (f) to conceal the unauthorized dumping, falsely entered a subordinate Town of Cortlandt worker's overtime hours as having occurred on a weekday

4

when, in truth and in fact, as DYCKMAN well knew, the subordinate's overtime had occurred, at DYCKMAN's direction, on a weekend.

6. Personal and financial benefits offered and paid for by GLENN GRIFFIN, the defendant, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, to ROBERT DYCKMAN, the defendant, and DYCKMAN's relatives and associates, in exchange for official action included, but were not limited to: (a) cash bribes; (b) extensive improvements to DYCKMAN's residential property at no cost; (c) truck beds full of flowers, dirt, soil, compost, and hanging baskets at no cost; (d) truck beds full of wood at no cost; (e) a backdated, false invoice for provision to an insurance company so that DYCKMAN or his associate could fraudulently receive payment from the insurance company; and (f) assistance in finding post-Town of Cortlandt employment.

## Statutory Allegations

7. From at least in or about 2018, up to and including at least in or about February 2020, in the Southern District of New York and elsewhere, GLENN GRIFFIN, and ROBERT DYCKMAN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 666.

5

8.     It was a part and an object of the conspiracy that ROBERT DYCKMAN, the defendant, being an agent of a local government, to wit, the Town of Cortlandt, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept anything of value from a person, intending for DYCKMAN to be influenced and rewarded in connection with business, transactions, and series of transactions of such local government involving a thing of value of $5,000 and more, while the Town of Cortlandt was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B), to wit, DYCKMAN solicited and accepted personal and financial benefits from GLENN GRIFFIN, the defendant, in exchange for, and as a reward for, official action taken by DYCKMAN and other Town of Cortlandt workers at DYCKMAN's direction.

9.     It was further a part and an object of the conspiracy that GLENN GRIFFIN, the defendant, did corruptly give, offer, and agree to give a thing of value to a person, with the intent to influence and reward an agent of a local government, to wit, the Town of Cortlandt, in connection with business, transactions, and series of transactions of such local government, involving a thing of value of $5,000 and more, while such local

6

government was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2), to wit, GRIFFIN provided personal and financial benefits to DYCKMAN, in exchange for, and as a reward for, official action taken by DYCKMAN and other Town of Cortlandt workers at DYCKMAN's direction.

## Overt Acts

10.  In furtherance of the conspiracy and to effect the illegal objects thereof, GLENN GRIFFIN, and ROBERT DYCKMAN, the defendants, committed or caused to be committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.  On numerous occasions from at least in or about 2018, up to and including at least in or about September 2019, typically on Saturdays or after normal working hours, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump, in total, hundreds of loads of unauthorized materials.  For example:

i.  On or about November 23, 2018, DYCKMAN ensured that GRIFFIN, or others working for or with

GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 12 loads of unauthorized materials.

        ii.    On or about December 3, 2018, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 3 loads of unauthorized materials.

        iii.    On or about February 26, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 9 loads of unauthorized materials.

        iv.    On or about February 28, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 7 loads of unauthorized materials.

        v.    On or about March 8, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 5 loads of unauthorized materials.

vi.     On or about March 30, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 17 loads of unauthorized materials.

vii.     On or about April 6, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 6 loads of unauthorized materials.

viii.     On or about April 8, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 5 loads of unauthorized materials.

ix.     On or about April 18, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 10 loads of unauthorized materials.

x.     On or about April 22, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received

9

unauthorized access to Arlo Lane to dump approximately 9 loads of unauthorized materials.

xi.     On or about April 27, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 17 loads of unauthorized materials.

xii.     On or about May 11, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 13 loads of unauthorized materials.

xiii.     On or about May 18, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 27 loads of unauthorized materials.

xiv.     On or about June 8, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 6 loads of unauthorized materials.

xv.     On or about June 22, 2019, DYCKMAN

ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 12 loads of unauthorized materials.

xvi.    On or about June 29, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 2 loads of unauthorized materials.

xvii.    On or about July 6, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 2 loads of unauthorized materials.

xviii.    On or about July 20, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 20 loads of unauthorized materials.

xix.    On or about August 1, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 3 loads

of unauthorized materials.

xx.     On or about August 2, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 3 loads of unauthorized materials.

xxi.     On or about August 3, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 12 loads of unauthorized materials.

xxii.     On or about August 8, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 39 loads of unauthorized materials.

xxiii.     On or about August 16, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 17 loads of unauthorized materials.

xxiv.     On or about August 17, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN

or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 5 loads of unauthorized materials.

xxv.    On or about August 20, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 10 loads of unauthorized materials.

xxvi.    On or about August 21, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 6 loads of unauthorized materials.

xxvii.    On or about August 23, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 3 loads of unauthorized materials.

xxviii.    On or about August 24, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 20 loads of unauthorized materials.

xxix.    On or about September 20, 2019, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump approximately 2 loads of unauthorized materials.

b.   On numerous occasions in or around 2018, GRIFFIN and DYCKMAN, using DYCKMAN's Town of Cortlandt cell phone, sent text messages in furtherance of the conspiracy and to effect the illegal objects thereof.  For example:

i.    On or about November 19, 2018, DYCKMAN texted an associate, when discussing finances, "I'm seeing Glenn today I'll have money for food today."

ii.    On or about November 23, 2018, GRIFFIN and DYCKMAN discussed GRIFFIN's unauthorized dumping and concealing this unauthorized dumping from others that may be at Arlo Lane.  For example, DYCKMAN texted GRIFFIN, "Hey hold up on some of the trucks coming in okay Chris is coming out"; in response, GRIFFIN asked DYCKMAN if Chris was "coming to Arlo?"; DYCKMAN answered in the affirmative; GRIFFIN responded "Oh shit. R u at arlo?" and noted "I will try and redirect"; DYCKMAN texted "Two of them just left" and "When we did get pretty good at 12 loads in."  DYCKMAN and GRIFFIN then arranged to meet at Arlo Lane later that day.

iii.     On or about December 2, 2018, GRIFFIN and DYCKMAN discussed GRIFFIN's unauthorized dumping and concealing this unauthorized dumping from others that may be at Arlo Lane. For example, GRIFFIN texted DYCKMAN, "Can I dump there tmrw a few loads by any chance ?"; DYCKMAN responded, "Yes just let me know what time"; GRIFFIN responded, "That's great. I will take care of u for sure." DYCKMAN then cautioned, "Let me see if leader guy is in"; GRIFFIN wrote, "Ok. Do u want to let me know in the Am ?"

iv.     On or about the next day, December 3, 2018, GRIFFIN and DYCKMAN further discussed GRIFFIN's unauthorized dumping and concealing this unauthorized dumping from others that may be at Arlo Lane. For example, GRIFFIN texted DYCKMAN, "Any chance we can dump At arlo?"; "They are coming know to arlo. Just want to Give you a heads up"; and "I have a load or 2 coming in at 1230. Is that ok." DYCKMAN responded in the affirmative, before later texting GRIFFIN, "Had to send driver away chris is around there." In response, GRIFFIN asked, "Ok what about the other loads ? Should I turn them away ?" DYCKMAN answered, "Yea hold them off for till I get back to you." GRIFFIN responded, "Ok. N p," before asking almost three hours later, "Is. The coast clear ?" GRIFFIN later texted DYCKMAN, "U think I can drop a few loads

tmrw am ?" DYCKMAN responded in the affirmative.

v. On or about December 3, 2018, GRIFFIN and DYCKMAN continued their discussions of GRIFFIN's unauthorized dumping at Arlo Lane and concealing this unauthorized dumping from others that may be at Arlo Lane. For example, GRIFFIN texted DYCKMAN, "Pop. I no this is annoying . Can we dump a few loads first thing only tmrw. ??" DYCKMAN responded, "Yes just give me a time and I will pull him out." GRIFFIN texted DYCKMAN back, "We will be there 830-900 .. and I want to take care of u guys I don't want it for nothing. It's a big help to me." DYCKMAN noted, "Ok give me 30 min heads up."

vi. The next day, on or about December 4, 2018, GRIFFIN and DYCKMAN continued their discussions of GRIFFIN's unauthorized dumping and concealing this unauthorized dumping from others that may be at Arlo Lane. For example, GRIFFIN texted DYCKMAN, "930-945 they will be be there ?" DYCKMAN responded, "Can I do the next round" and "I cant get him out right now." GRIFFIN affirmed, "Ok n p second round. Ty," and DYCKMAN responded, "Great just give me heads up so I can pull him out." GRIFFIN asked, "Ok. Is he at arlo ?" DYCKMAN responded, "Yes I thout we were doing 2nd round."

vii.    Approximately 30 minutes later, that same day, on or about December 4, 2018, GRIFFIN and DYCKMAN continued their discussions of GRIFFIN's unauthorized dumping and concealing this unauthorized dumping from others that may be at Arlo Lane.   For example, DYCKMAN alerted GRIFFIN to the presence of a cop with the New York State Department of Environmental Conservation ("D.E.C." or "DEC"), "D.E.C. cop sitting at our gate."  GRIFFIN responded, "Why ??" and asked, "Should I go talk to him ?"  DYCKMAN cautioned GRIFFIN against doing so, texting "Nah I think it will look suspicious."  GRIFFIN wondered, "Do u think Someone called on me?"  DYCKMAN advised, "I will try to find out but right now we on hold here."  Ten minutes later, GRIFFIN texted DYCKMAN, "R u by urself now ?"  DYCKMAN responded, "Call me."

viii.    Later that same day, on or about December 4, 2018, GRIFFIN and DYCKMAN continued their discussions of GRIFFIN's unauthorized dumping and concealing this unauthorized dumping from others that may be at Arlo Lane.  For example, GRIFFIN informed DYCKMAN about the D.E.C. cop, "He left. 🙏" DYCKMAN responded, "He moved" and "I know hes in the car dealer lot."   GRIFFIN responded, "Wtf." DYCKMAN promised, "I'll call you back later."

ix.     On or about December 4, 2018, GRIFFIN and DYCKMAN continued their discussions of GRIFFIN's unauthorized dumping at Arlo Lane and concealing this unauthorized dumping from others that may be at Arlo Lane. For example, GRIFFIN texted DYCKMAN, "Did u hear anything on the DEC TODAY ?" DYCKMAN responded, "No not they were there till the guy left at 3:30," and asked, "Did you see anything or any of your guys." GRIFFIN responded, "No we didn't see anything. Did ur guys know we were coming today ?" DYCKMAN responded, "No nobody but me and you." GRIFFIN responded, "Something isn't right ? ... I was gonna swap the sweepings and take out blacktop today but I redirected them. I was scared to death."

c.    In or around May 2019, in order to conceal unauthorized dumping at Arlo Lane, DYCKMAN entered a subordinate's overtime hours falsely as having occurred on a weekday when, in truth and in fact, as DYCKMAN well knew, the subordinate's overtime had occurred, at DYCKMAN's direction, on a weekend in connection with GRIFFIN's, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, unauthorized dumping at Arlo Lane.

d.    On numerous occasions from at least in or about 2018, up to and including at least in or about October 2019,

GRIFFIN paid DYCKMAN cash bribes.

e.   From at least in or about 2018, up to and including at least in or about October 2019, GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, provided, at no cost, extensive improvements to DYCKMAN's residential property in Verplanck, New York, including work on the property's bluestone patio, chain-link fence, and driveway.

f.   On numerous occasions from at least in or about 2018, up to and including at least in or about October 2019, GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, regularly provided, at no cost, truck beds full of flowers, dirt, soil, compost, and hanging baskets to DYCKMAN and DYCKMAN's relatives and associates.

g.   On numerous occasions from at least in or about 2018, up to and including at least in or about October 2019, GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, regularly provided, at no cost, truck beds full of wood to DYCKMAN and DYCKMAN's relatives and associates.

h.   In or around December 2018, GRIFFIN or others at GRIFFIN's direction, provided a backdated, false invoice to DYCKMAN or his associate purporting to be from in or around October

19

2018, for DYCKMAN or his associate's provision to an insurance company so that DYCKMAN or his associate could fraudulently receive an over $3,000 payment from the insurance company. Specifically, in the midst of conversations about unauthorized dumping, in a text message from on or around December 2, 2018, GRIFFIN asked DYCKMAN, "Yes what dates and how much per day should I put on invoice ?"; DYCKMAN responded, "10/16/2018----10/30/2018 $195.00 a night plus tax 😂 🤣 😂 🤣 😂 🤣," and "You the man papa 🍾🍾🍾." The next day, the text message conversation continued. GRIFFIN asked DYCKMAN, "Did u get the bill for the rental papa ??"; DYCKMAN responded, "You the best papa" and "Yes I did ty"; GRIFFIN suggested in sum and substance that DYCKMAN could buy "3000 bottles of wine now," followed by the emoji string "🍾🍾🍾🍾🍾🍾🍾🍾🍾🍾🍾🍾🍾🤣🤣🤣🤣🤣🤣🤣🤣🤣🤣🤣." In or around December 2018, the insurance company did in fact receive a reimbursement request from DYCKMAN or his associate and it paid out over $3,000 to DYCKMAN or his associate.

      i.    After DYCKMAN departed his Town of Cortlandt job, from at least in or around October 2019, up to and including at least in or around February 2020, GRIFFIN assisted DYCKMAN in identifying and obtaining new employment. GRIFFIN recommended DYCKMAN for employment at a Bronx-based employer with whom GRIFFIN

had an established relationship. In or around February 2020, DYCKMAN was hired by this Bronx-based employer.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Payment of Bribes and Gratuities in Illegal Dumping Scheme: GRIFFIN)

The Grand Jury further charges:

11. The allegations contained in paragraphs 1 to 6 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

12. From at least in or about 2018, up to and including at least in or about October 2019, in the Southern District of New York and elsewhere, GLENN GRIFFIN, the defendant, corruptly gave, offered, and agreed to give a thing of value to a person, with the intent to influence and reward an agent of a local government, to wit, the Town of Cortlandt, in connection with business, transactions, and series of transactions of such local government, involving a thing of value of $5,000 and more, while such local government was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, GRIFFIN provided personal and financial benefits to ROBERT DYCKMAN, the defendant, in exchange

for, to influence, and to reward official action taken by DYCKMAN and other Town of Cortlandt workers at DYCKMAN's direction.

(Title 18, United States Code, Sections 666(a)(2) and 2.)

## COUNT THREE
### (Receipt of Bribes and Gratuities in Illegal Dumping Scheme: DYCKMAN)

The Grand Jury further charges:

13.   The allegations contained in paragraphs 1 to 6 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

14.   From at least in or about 2018, up to and including at least in or about October 2019, in the Southern District of New York and elsewhere, ROBERT DYCKMAN, the defendant, being an agent of a local government, to wit, the Town of Cortlandt, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept a thing of value from a person, intending to be influenced and rewarded in connection with business, transactions, and series or transactions of such local government involving anything of value of $5,000 and more, while such local government was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, to wit, DYCKMAN accepted personal and financial benefits from GLENN GRIFFIN, the defendant, in exchange

22

for, and as a reward for, official action taken by DYCKMAN and other Town of Cortlandt workers at DYCKMAN's direction.

(Title 18, United States Code, Sections 666(a)(1)(B) and 2.)

## COUNT FOUR
### (Conspiracy to Misapply and Convert Property of Local Government Receiving Federal Funds in Illegal Dumping Scheme)

The Grand Jury further charges:

15.   The allegations contained in paragraphs 1 to 6 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

16.   From at least in or about 2018, up to and including at least in or about October 2019, in the Southern District of New York and elsewhere, GLENN GRIFFIN, and ROBERT DYCKMAN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 666(a)(1)(A).

17.   It was a part and an object of the conspiracy that ROBERT DYCKMAN, the defendant, being an agent of a local government, to wit, the Town of Cortlandt, said government receiving benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance each year between 2018 and 2019, without authority knowingly converted to the use of a person

23

other than its rightful owner and intentionally misapplied property valued at $5,000 and more, and owned by, and under the care, custody, and control of such government, to wit, DYCKMAN, without proper authorization from the Town of Cortlandt, agreed to and did cause Town of Cortlandt resources, including Arlo Lane and equipment, machinery, supplies, and materials at Arlo Lane intended for the Town of Cortlandt's regular public service usage, to be used for the personal benefit of GLENN GRIFFIN, the defendant.

<u>Overt Acts</u>

18. In furtherance of the conspiracy and to effect the illegal object thereof, GLENN GRIFFIN, and ROBERT DYCKMAN, the defendants, committed or caused to be committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On numerous occasions from at least in or about 2018, up to and including at least in or about September 2019, typically on Saturdays or after normal working hours, DYCKMAN ensured that GRIFFIN, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, received unauthorized access to Arlo Lane to dump, in total, hundreds of loads of unauthorized materials. As examples, the overt acts contained in paragraphs 10.a.i to 10.a.xxix of this Indictment are repeated,

realleged, and incorporated by reference as if fully set forth herein.

b.   On numerous occasions in or around 2018, GRIFFIN and DYCKMAN sent text messages in furtherance of the conspiracy and to effect the illegal objects thereof.  As examples, the overt acts contained in paragraphs 10.b.i to 10.b.ix of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

c.   In or around May 2019, in order to conceal unauthorized dumping at Arlo Lane, DYCKMAN entered a subordinate's overtime hours falsely as having occurred on a weekday when, in truth and in fact, as DYCKMAN well knew, the subordinate's overtime had occurred, at DYCKMAN's direction, on a weekend in connection with GRIFFIN's, or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction, unauthorized dumping at Arlo Lane.

(Title 18, United States Code, Section 371.)

### COUNT FIVE
**(Wire Fraud Conspiracy: Bid-Rigging Scheme)**

The Grand Jury further charges:

19.   The allegations contained in paragraphs 1 to 6 of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

## Overview of the Conspiracy

20.  Beginning at least in or about 2015, up to and including at least in or about 2018, GLENN GRIFFIN, the defendant, and others, engaged in a bid-rigging scheme.  In this bid-rigging scheme, GRIFFIN or others working for or with GRIFFIN or Griffin's Companies at GRIFFIN's direction defrauded municipalities, including the village of Croton-on-Hudson, for work on its schools, and the hamlet of Verplanck, for work at its fire department, by making materially false statements in bids for work and related documents, namely, sham, non-competitive, and inflated bids on behalf of entities that GRIFFIN did not work for or have authorization to submit bids on behalf of, so that Griffin's Companies would be the low bidder in a pool of purportedly competitive bids and be able to obtain proceeds for their work on the projects.  Based on these sham, non-competitive, and inflated bids, Griffin's Companies were awarded contracts for, and received payments from, the village of Croton-on-Hudson, for work on its schools, and the hamlet of Verplanck, for work at its fire department, in excess of approximately $133,000.

## Statutory Allegations

21.  From at least in or about 2015, up to and including at least in or about 2018, in the Southern District of New York and elsewhere, GLENN GRIFFIN, the defendant, and others known and

unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with others to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

22. It was a part and object of the conspiracy that GLENN GRIFFIN, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, GRIFFIN participated in a scheme to defraud municipalities, including the village of Croton-on-Hudson, New York and the hamlet of Verplanck, New York, by making and causing others to make materially false statements in bids for work and related documents, and in furtherance thereof, GRIFFIN transmitted and caused others to transmit by means of interstate wire sham, non-competitive, and inflated bids on behalf of entities that Griffin did not work for or have authorization to submit bids on behalf of, in order to execute this bid-rigging scheme and obtain the proceeds therefrom, whereby GRIFFIN and Griffin's Companies

would be the low bidder in a pool of purportedly competitive bids and be able to obtain proceeds for GRIFFIN's and Griffin's Companies' work on the projects.

(Title 18, United States Code, Section 1349.)

## COUNT SIX
### (Wire Fraud: Bid-Rigging Scheme)

The Grand Jury further charges:

23.   The allegations contained in paragraphs 1 to 6, and paragraph 20, of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

24.   From at least in or about 2015, up to and including at least in or about 2018, in the Southern District of New York and elsewhere, GLENN GRIFFIN, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, GRIFFIN participated in a scheme to defraud municipalities, including the village of Croton-on-Hudson, New York and the hamlet of Verplanck, New York, by making and causing others to make materially false statements in bids for

28

work and related documents, and in furtherance thereof, GRIFFIN transmitted and caused others to transmit by means of interstate wire sham, non-competitive, and inflated bids on behalf of entities that Griffin did not work for or have authorization to submit bids on behalf of, in order to execute this bid-rigging scheme and obtain the proceeds therefrom, whereby GRIFFIN and Griffin's Companies would be the low bidder in a pool of purportedly competitive bids and be able to obtain proceeds for GRIFFIN's and Griffin's Companies' work on the projects.

(Title 18, United States Code, Sections 1343, 2.)

## COUNT SEVEN
**(Aggravated Identity Theft: Bid-Rigging Scheme)**

The Grand Jury further charges:

25.    The allegations contained in paragraphs 1 to 6, and paragraph 20, of this Indictment are repeated, realleged, and incorporated by reference as if fully set forth herein.

26.    From at least in or about 2015, up to and including at least in or about 2018, in the Southern District of New York and elsewhere, GLENN GRIFFIN, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, GRIFFIN unlawfully used the names and

telephone numbers of other persons to transmit and cause others to transmit without lawful authority sham, non-competitive, and inflated bids for municipal projects, in violation of Title 18, United States Code, Sections 1343 and 1349, as charged in Counts Five and Six of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## FORFEITURE ALLEGATION

27. As a result of committing one or more of the offenses alleged in Counts One through Six of this Indictment, GLENN GRIFFIN, and ROBERT DYCKMAN, the defendants, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Six of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Asset Provision

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

30

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

31

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

GLENN GRIFFIN, and
ROBERT DYCKMAN,

Defendants.

## INDICTMENT

22 Cr.

(Title 18, United States Code, Sections 371,
666, 1028A, 1343, 1349, and 2.)

Foreperson.

DAMIAN WILLIAMS
United States Attorney.