

Jeffrey C. Hoffman
212.237.1018
jhoffman@windelsmarx.com

windelsmarx.com

**156 West 56th Street | New York, NY 10019T.**
**212.237.1000 | F. 212.262.1215**

April 21, 2025

**Via ECF**

Hon. Vincent L. Briccetti
United States District Judge
300 Quarropas Street
White Plains, New York 10601

     Re:  *United States v. Glenn Griffin*,
        **7:22-cr-00390-VB**

Dear Judge Briccetti:

  The defense writes in reply to the Government's opposition filed on April 18, 2025. (ECF No. 129). The Government's opposition to Mr. Griffin's motion for reconsideration avoids squarely addressing the central flaw underpinning his guilty plea: the plea allocution failed to establish the essential elements of conspiracy under Rule 11(b)(3) and was marred by contradictions and equivocations that made clear Mr. Griffin did not knowingly and willfully admit guilt. Instead of grappling with this defect, the Government invokes procedural technicalities, waiver language, and a surface-level reading of the plea transcript.

  **I.**  **The Government's Procedural Arguments Ignore the Imperatives of Rule 11(b)(3).**

  The Government's first line of attack is procedural, asserting that Mr. Griffin's motion is untimely under Local Rule 49.1(b). This procedural stance misses the point. As the Government concedes, Courts retain the discretion to excuse an untimely filing "[where there is] good cause to do so" (*see United States v. Okparaeke*, 2019 WL 4233427, at *2 (S.D.N.Y. Sept. 6, 2019) (citations omitted), or "when there was a compelling reason to ignore the time limit." *Richman v. W.L. Gore & Associates., Inc.*, F. Supp. 753, 755 (S.D.N.Y. 1997) (citation and internal quotation marks omitted). Addressing and curing a "fundamental defect" in a guilty plea, as raised here, is precisely the kind of circumstance that justifies excusal of the late filing. *See Godwin v. United States*, 687 F.2d 585, 590-91 (2d Cir. 1982) ("The failure to inform Godwin of the nature of the charges against him and the lack of a factual basis for his plea in light of his denial of criminal intent were substantial defects undermining the validity of the plea. Such defects are not technical . . . but are so fundamental as to cast serious doubt on the voluntariness of the plea.") (citation

omitted); *United States v. Garcia*, 587 F.3d 509, 520 (2d Cir. 2009); *see also Okparaeke*, 2019 WL 4233427, at *2 (S.D.N.Y. Sept. 6, 2019) (noting that courts may excuse an untimely filing for good cause).

Moreover, while the motion is styled as one for reconsideration under Local Criminal Rule 49.1(b), it also serves to preserve and supplement Mr. Griffin's request for pre-sentencing relief under Rule 11(d)(2)(B). Denying the motion on procedural grounds alone would risk perpetuating a conviction based on a legally insufficient plea allocution, resulting in serious prejudice to Mr. Griffin and undermining the integrity of the judicial process. *See United States v. Murphy*, 942 F.3d 73, 88 (2d Cir. 2019) ("Murphy did not admit having had the intent required for commission of the crime. Yet he was convicted. This strikes at the heart of the fairness, integrity, and public reputation of judicial proceedings."). Mr. Griffin does not merely rehash old arguments but identifies a fundamental defect: the Court accepted a guilty plea despite an allocution that did not establish the essential elements of the charged conspiracy offenses. The Court's initial decision on the motion to withdraw did not adequately consider this issue, hence the need for it to be considered prior to Mr. Griffin's sentencing.

The Supreme Court and Second Circuit have long held that Rule 11(b)(3) imposes a substantive duty on the court to ensure a plea rests on a sufficient factual basis before entering judgment. *See United States v. Vonn*, 535 U.S. 55, 58 (2002); *United States v. Livorsi*, 180 F.3d 76, 78 (2d Cir. 1999); *United States v. Smith*, 160 F.3d 117 (2d Cir. 1998). An insufficient plea cannot stand, even if the issue is raised later than the Government would like, because a defendant cannot lawfully be convicted on an incomplete or ambiguous record. Courts prioritize the integrity of the plea colloquy over procedural rigidity when fundamental rights are at stake. *See United States v. Adams*, 448 F.3d 492, 499 (2d Cir. 2006) (vacating guilty plea due to insufficient allocution where defendant's initial motion to withdraw was denied and supplemental motion to withdraw was subsequently filed with new counsel). In any case, the Court's Rule 11 obligations "continue until it has entered judgement," which has not yet occurred. *Smith*, 160 F.3d at 121. Accordingly, Mr. Griffin has timely raised this issue.

## II.     The Government Mischaracterizes the Nature of the Deficiency in the Plea Allocution.

The Government attempts to characterize the plea colloquy as sufficient, pointing to a series of one-word affirmations by Mr. Griffin following a recess. However, this characterization ignores the clear record of confusion, denial, and ambiguity that preceded these answers — all deficiencies the Court expressly recognized when Judge Reznik halted the allocution and ordered the parties to start over. (Plea Tr. 37:19-22).

During the initial portion of the allocution, Mr. Griffin explicitly distanced himself from any admission of guilt to the essential element of conspiracy: the existence of a knowing and willful agreement. His statements repeatedly rejected the notion that he entered into an unlawful agreement, as evidenced by the following:

- "I gave him some money, like a gratuity. I didn't think it was going to be illegal." (Plea Tr. 34:19-23).
- "When this came down, it came as I bribed him, which you know, they had – his wife was the grand jury witness who lied, made up stories . . ." (Plea Tr. 34:23-25).
- "No. There was never anything illegal about it." (Plea Tr. 35:19-25).

These are not minor inconsistencies. They strike at the heart of the agreement element of conspiracy, which must be knowingly and willfully entered into with the intent to commit an illegal act. These statements also reflect a misunderstanding or rejection of the legal characterization of his conduct, casting doubt on whether the plea was entered into knowingly and voluntarily. Judge Reznik echoed that concern in real time, when she paused the proceeding and noted that Mr. Griffin was not making statements consistent with having acted with the requisite mental state. (Plea Tr. 37:19-22). Courts have consistently held that when a defendant denies a core element, the plea cannot stand. *See United States v. Harrington*, 354 F.3d 178, 183 (2d Cir. 2004) (reversing denial of motion to withdraw guilty plea due to uncertainty about admission to conspiracy elements); *Godwin*, 687 F.2d at 590 ("However, if the defendant denies an element of the offense or generally maintains his innocence, the record must be augmented to establish a basis for the plea.").

The Government also ignores the legal consequence of Mr. Griffin's use of terms like "gratuity" rather than "bribe," and his layperson's understanding of "agreement." These remarks suggest informal or commercial arrangements, not criminal conspiracies, *i.e.* the crimes to which Mr. Griffin was allocuting. This distinction is crucial because a conspiracy requires a specific intent to violate the law — a point never clearly or affirmatively established in this case. *See Garcia*, 587 F.3d at 518 (vacating plea where defendant denied essential element of conspiracy). Nothing supplied by the Government cures the foregoing infirmities.

### III. The Second Allocution Did Not Cure the Fundamental Defects Inherent in Mr. Griffin's Plea Allocution.

After Judge Reznik halted the initial plea, the second allocution session relied on leading, compound questions crafted by Mr. Griffin's counsel, not the Court or the Government, to salvage the plea. These questions did not elicit the specific admissions required by Rule 11(b)(3) but instead invited one-word affirmations to questions along the following lines:

- "Did you, sir, pay or give something of value to the co-defendant . . . for access . . . ?" (Plea Tr. 40:9-41:25).
- "Did you know it was illegal?" (Plea Tr. 41:24).

These responses failed to establish one of the core elements of conspiracy: that Mr. Griffin knowingly and willfully entered into an agreement with another person to commit an unlawful act. They confirmed conduct, but not concerted intent. Nowhere in the second allocution did Mr. Griffin acknowledge having entered into a mutual understanding or unlawful arrangement with a co-conspirator. This omission is fatal under Rule 11(b)(3), which requires that the Court determine that the defendant's admissions satisfy each element of the charged offense. *See United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999); *see also Adams*, 448 F.3d at 499 ("[T]he record as it

then stood lacked a factual basis for the 'specific nexus' between the gun and the drug-trafficking offense that would be required to support a plea.").

Additionally, Mr. Griffin's prior denial that he agreed to participate in any illegal dumping scheme (Plea Tr. 35:19-25) was never meaningfully withdrawn or contradicted. The Second Circuit has held that where a defendant contests an essential fact, the court must resolve the inconsistency before accepting the plea. *See Garcia*, 587 F.3d at 518. The failure to do so here renders Mr. Griffin's conviction legally infirm on Count One.

For Count Two, the record reflects that Mr. Griffin allocuted to submitting sham bids, not entering into an agreement with any other party to do so. (*See* Plea. Tr. 36:24-37:16, 41:4-42:8). Moreover, he allocuted to not disclosing "to the entities on whose behalf such sham proposals were submitted that such proposals were, in fact, being submitted" (*id*. 41:18-20), thereby further undermining a factual finding that there was <u>any agreement</u> to submit sham bids. *See Montgomery v. United States*, 853 F.2d 83, 85 (2d Cir. 1988) ("In short, the record does not show any admission by Montgomery that he had participated in an illegal conspiracy.").[1] The Government's opposition, by focusing once again on the wire fraud, merely repeats the same error that occurred during Mr. Griffin's plea allocution, namely a failure to plead to the agreement element.

In light of the foregoing deficiencies, which remain uncured, Mr. Griffin's plea allocutions to the two conspiracy counts recited in the Superseding Information lacked adequate factual bases.

### IV. The Government's Waiver Argument Ignores the Foundational Question of Plea Validity.

The Government's reliance on the waiver contained within Mr. Griffin's plea agreement ignores the foundational principle that a waiver is enforceable only if the plea itself is valid. *See United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019) (holding that an appeal waiver in a plea agreement does not bar challenges to the plea process itself, particularly where the district court failed to comply with Rule 11). Where a plea is based on an insufficient factual record, any waiver provision collapses. *See United States v. Andrades*, 169 F.3d 131, 136 (2d Cir. 1999) (vacating plea where allocution failed to establish conspiracy elements, despite the defendant's written plea agreement).

The Government's invocation of *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011), in support of its waiver argument, is readily distinguishable. In *Riggi*, the defendant did not challenge the factual basis of his plea at all, nor did he move to withdraw the plea, as has been done here. Instead, the appeal focused on the alleged *ex post facto* application of the sentencing guidelines, which was raised in connection with sentencing. The defendant knowingly entered into a detailed plea agreement that addressed and waived appeal rights, and the record reflected a fully informed and voluntary waiver. *See generally Riggi*, 649 F.3d at 147-150. By contrast, Mr. Griffin's challenge goes to the core of the plea's validity itself: the absence of a sufficient factual

---

[1] The Government's invocation of cases dealing with the sufficiency of evidence adduced at trial have little bearing on the instant matter. *See, e.g., United States v. Menendez*, 2024 WL 5103452 (S.D.N.Y. 2024) (dealing with *inter alia* Rule 29 motions after jury trial); *United States v. Landesman*, 17 F.4th 298 (2d Cir. 2021) (same).

basis under Rule 11(b)(3) and the presence of contradictory statements during the allocution. Unlike the defendant in *Riggi*, Mr. Griffin denied key elements of the offense, and his plea was accepted only after a fragmented and flawed allocution — so flawed, in fact, that Judge Reznik deemed it legally insufficient and directed the parties to redo it following a recess. Unlike here, the waiver in *Riggi* was enforced only after the plea itself was found to be valid and voluntarily entered. Moreover, *Riggi* seems to support disregarding the plea waiver as well, since the *Riggi* court noted that, "a violation of a fundamental right warrants voiding an appeal waiver." *Riggi*, 649 F.3d at 147.

In short, because the enforceability of the waiver depends entirely on the validity of the plea, and the plea here was not valid, the plea agreement's waiver does not control the outcome of this application.

### V.    The Record Risks Manifest Injustice if the Plea is Upheld.

Rule 11(b)(3) is not a mere formality. It is a safeguard designed to prevent the acceptance of involuntary or uninformed pleas. *See Tocci v. United States*, 178 F. Supp. 2d 176, 180 (N.D.N.Y. 2001) (vacating plea for failure to elicit sufficient factual basis). Here, the injustice is not theoretical. Upholding the plea would result in Mr. Griffin being sentenced for charges that he never clearly admitted to. This includes a direct denial on the record that he entered into any unlawful agreement—the core element of conspiracy. Such a conviction, based on an incomplete and contradictory allocution, violates both Rule 11 and fundamental fairness.

Moreover, the Court itself expressed concern about the sufficiency of the plea during the allocution. Judge Reznik halted the proceeding, stating she did not believe Mr. Griffin was making statements consistent with having acted knowingly and willfully. (Plea Tr. 37:19-22). The second allocution failed to resolve these deficiencies, relying instead on conclusory affirmations without revisiting Mr. Griffin's earlier denials. This record reflects a missed opportunity to ensure that Mr. Griffin understood and admitted the elements of the offense, in direct contravention of Rule 11. Where, as here, the Court's own hesitation is memorialized in the transcript, the need to revisit the plea is not merely justified—it is imperative. *See, e.g., Adams*, 448 F.3d at 500 (noting that plea allocution deficiencies cannot be cured after-the-fact, such as in a subsequent hearing).

Given Mr. Griffin's explicit denials, ambiguous responses, and the Court's own recognition that the initial allocution was insufficient, the plea colloquy fell well below the standard required to uphold a conviction. The failure to correct this record would allow a conviction to rest on a plea that lacks the legal prerequisites for validity — a manifest injustice.

For the foregoing reasons, this Court should reconsider its prior ruling, vacate its acceptance of Mr. Griffin's guilty plea, and grant such further relief as it deems just and proper.

Very truly yours,

/s/ *Jeffrey C. Hoffman*
Jeffrey C. Hoffman

cc:    All counsel of record (via ECF)