UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA            :
                                                          :  **OPINION AND ORDER**
v.                                                       :
                                                          :  22 CR 390-1 (VB)
GLENN GRIFFIN,                              :
                        Defendant.           :
--------------------------------------------------------------x

Briccetti, J.:

By motion dated July 21, 2025 (Doc. #161), defendant Glenn Griffin seeks a stay of surrender and bail pending appeal.  On August 26, 2024, pursuant to a plea agreement, Griffin pleaded guilty to two counts in a superseding information—a conspiracy to bribe an employee of the Town of Cortlandt in exchange for access to a Town facility for the purpose of illegal dumping, and a separate conspiracy to commit wire fraud by engaging in a bid-rigging scheme.  On June 11, 2025, after finding that the applicable Guidelines range was 37-46 months' imprisonment, the Court imposed a sentence of 24 months' imprisonment on each count, to run concurrently.  At Griffin's request, the Court set a direct surrender date of September 11, 2025, and permitted Griffin to remain free on bail until then.[1]

Although he made no such application at the time of sentencing, Griffin now argues he should be granted a stay of surrender and bail pending appeal because he meets the criteria for bail pending appeal set forth in 18 U.S.C. § 3143(b).  Crucially, Griffin contends his appeal raises substantial questions of law or fact which, if determined favorably to him on appeal, would likely result in a materially different outcome in this case.  The government opposes the

---

[1] The parties' familiarity with factual and procedural history of these proceedings is presumed.  To the extent relevant, this order incorporates the factual and procedural background recited in the Court's Opinion and Order denying Griffin's motion to withdraw his guilty plea (Doc. #117), and in the Court's Order denying Griffin's motion for reconsideration (Doc. #131).

1

motion, contending Griffin has waived almost of all of his appellate rights, and that, in any event, he raises no substantial question that could materially alter his conviction or sentence.

For the reasons set forth below, the motion is DENIED.

## DISCUSSION

I.  Legal Standard

Under Section 3143(b), a defendant sentenced to a term of imprisonment shall be detained pending appeal, unless the Court finds the defendant "is not likely to flee or pose a danger to the safety of any other person or the community if released," and that "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b). The statute establishes "a presumption in favor of detention." United States v. Abuhamra, 389 F.3d 309, 319 (2d Cir. 2004).[2] Therefore, "the burden of persuasion rests on the defendant." United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985).

A "substantial" question of law or fact is "is a close question or one that very well could be decided the other way." United States v. Randell, 761 F.2d at 125. If a question is substantial then the court "must . . . consider whether that question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Id.

---

[2]  Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

II.    <u>Analysis</u>

Griffin is not entitled to bail pending appeal because he has not met his burden of identifying a substantial question of law or fact.

As a threshold matter, government does not dispute that Griffin is not likely to flee or pose a danger if released, and does not appeal for the purpose of delay. The Court agrees, meaning it must next consider whether Griffin raises a substantial question of law or fact.

Griffin argues his appeal raises three such questions: (i) whether his guilty plea was voluntary and had an adequate factual basis, (ii) whether he received ineffective assistance of counsel in connection with his guilty plea, and (iii) whether his sentence was predicated on an erroneous loss determination.

The Court is not persuaded. None of Griffin's arguments—either combined or in isolation—raises a substantial question of law or fact. Therefore, the motion must be denied.

    A.    <u>Appellate Waiver</u>

The Court first addresses the government's argument that Griffin "waived almost all appellate review" because his plea agreement contained a waiver of any appellate challenge to his sentence or conviction, except for a challenge based on a claim of ineffective assistance of counsel. (Doc. #165 at 28). In the government's view, Griffin cannot challenge the validity of his guilty plea or the Court's calculation of loss or restitution at sentencing—meaning those arguments cannot create a substantial question of law or fact warranting bail pending appeal.

The Court agrees with the government in part. Unless the Second Circuit agrees with Griffin that his guilty plea is invalid, he is barred by the appellate waiver from challenging his sentence.

But the Court does not agree Griffin's appellate waiver bars him from challenging the validity of his guilty plea. The Second Circuit does not reject a defendant's challenge to a district court's denial of a motion to withdraw a guilty plea simply because the underlying plea agreement contains an appellate waiver. See United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001). Put another way, the presence of an appellate waiver does not prevent the court of appeals from fully considering a defendant's appeal of a district court's denial of a motion to withdraw a guilty plea. This makes intuitive sense; after all, if, for example, a defendant were coerced into involuntarily agreeing to plead guilty, denying his appeal because he also involuntarily agreed to an appellate waiver would be circular and a miscarriage of justice.

Accordingly, the Court concludes the appellate waiver in Griffin's plea agreement will not bar him from challenging the validity of his guilty plea on appeal. However, if the Second Circuit upholds the validity of the guilty plea, then the appellate waiver will foreclose review of the challenge to his sentence. The Court considers Griffin's bail pending appeal arguments in that light.

      B.      <u>Validity of the Guilty Plea</u>

Griffin contends he did not freely and voluntarily plead guilty and his plea lacked a sufficient factual basis, and that together these deficiencies constitute a substantial question of fact or law.

The Court disagrees.

The Court has exhaustively examined the circumstances surrounding Griffin's guilty plea and will not do so again here. That said, a short summary is necessary to provide context for deciding the instant motion. In brief, Griffin asserts he was pressured into pleading guilty by his former defense counsel, Stephen G. McCarthy, Jr., Esq., who, according to Griffin, assured him

he would not face a custodial sentence if he pleaded guilty, did not review the plea agreement with him in advance of sentencing, and failed to pursue factual and legal avenues that would have strengthened his defense. At the August 26, 2024, change of plea hearing before Magistrate Judge Reznik, Griffin displayed reluctance at answering certain questions—leading Judge Reznik to call two separate recesses for Griffin to confer with Mr. McCarthy. Griffin ultimately decided to plead guilty at that hearing, and affirmed he was doing so freely and voluntarily. But he later retained new counsel and attempted to withdraw the plea.

On December 5, 2024, the Court conducted a day-long evidentiary hearing at which Griffin, Mr. McCarthy, and Monica Hughes, Esq. (an attorney at Mr. McCarthy's firm who assisted him on Griffin's case) testified. Mr. McCarthy and Ms. Hughes both denied Griffin's allegations. After the hearing, Griffin and Mr. McCarthy submitted evidentiary materials— largely text messages and memoranda sent between the two of them—for the Court's review.

On March 13, 2025, the Court issued a comprehensive opinion denying Griffin's motion to withdraw his guilty plea. (Doc. #117). As relevant here, it determined Griffin freely and voluntarily pleaded guilty. In reaching that conclusion, the Court noted that Griffin participated in a "thorough and exhaustive plea colloquy" with Judge Reznik before pleading guilty. (Id. at 24). It also found Mr. McCarthy and Ms. Hughes to be credible witnesses whose denials of Griffin's allegations were supported, at least in part, by the documentary evidence. In contrast, the Court determined Griffin's testimony and allegations were not credible. After the Court's ruling, Griffin moved for reconsideration. The Court denied that motion on April 24, 2025. (Doc. #131).

The Court did not find that the question of Griffin's voluntariness was a close call when denying his motion to withdraw his guilty plea, and nothing in Griffin's motion for bail pending appeal changes that analysis.

To start, Griffin's extensive colloquy with Judge Reznik provided a sufficient basis for the Court to determine the guilty plea was voluntary. Throughout the change of plea hearing, Griffin repeatedly confirmed that no one pressured him to plead guilty, he signed the plea agreement freely and voluntarily, and he was satisfied with Mr. McCarthy's representation of him. When Griffin expressed hesitation, Judge Reznik called two recesses to allow him to confer with Mr. McCarthy. After the second recess, he provided the factual basis for his guilty plea and admitted to the underlying conduct at issue without raising any concerns that he was being pressured to plead guilty.

Griffin advances a conclusory argument that his colloquy with Judge Reznik did not create a sufficient factual basis for his guilty plea, but that claim is also belied by the record. In response to Griffin's hesitation, Mr. McCarthy and the government agreed on a list of questions that Mr. McCarthy would ask Griffin in order to create a factual basis for his guilty plea. Mr. McCarthy then posed those questions to Griffin, and he answered each one affirmatively, without raising any further concerns. As to the bribery conspiracy charge, Griffin admitted he paid a bribe to the Town employee—his co-conspirator—in exchange for access to a Town facility for the purpose of illegal dumping, and that he knew his conduct was wrong and illegal. Through counsel, he did not contest the jurisdictional elements of that charge. The record also contained text messages between Griffin and the Town employee, which the government described at the change of plea hearing, and which were recited in the superseding information, that showed Griffin discussing the unauthorized dumping with the Town employee, their efforts

to conceal the scheme, and their agreement that Griffin would pay the employee for unauthorized access.  As to the bid-rigging scheme, Griffin admitted he caused sham bids on behalf of unknowing competitors to be submitted, did not disclose to the victim entities that he had submitted the sham bids, knew he would not have been awarded certain projects had he disclosed the bids actually came from him, used emails in connection with the scheme, and knew his conduct was wrong and illegal.  And the government proffered that Griffin solicited a sham bid from a co-conspirator.  The record thus provided a more than sufficient factual basis for the Court to accept Griffin's guilty plea to both conspiracy counts.

As for Mr. McCarthy, ample evidence demonstrates he did not coerce Griffin into pleading guilty.  Mr. McCarthy testified in detail about his representation of Griffin, and he explained that his opinion of the case against Griffin became more pessimistic as he learned more about the government's evidence.  Accordingly, although he initially provided rosier predictions about a potential resolution, Mr. McCarthy changed his mind and strongly advised Griffin it was in his best interest to plead guilty.  The Second Circuit has made clear that defense counsel's candid advice to take a guilty plea to avoid facing a strong government case at trial does not render that guilty plea involuntary.  United States v. Juncal, 245 F.3d at 172.

Griffin makes much of Mr. McCarthy's testimony that he refused to represent Griffin at trial if Griffin chose not to plead guilty, but—when examined against the full factual backdrop—Mr. McCarthy's admonitions were not coercive.  As the Court previously determined, Mr. McCarthy believed that "trial was not the best choice for Griffin," and correspondingly refused to profit by representing Griffin at a trial Mr. McCarthy believed would be futile.  (Doc. #117 at 27).  Further, the evidentiary hearing revealed that Griffin had a roster of civil attorneys on his

payroll and was wealthy enough to hire new defense counsel if necessary—thus reducing any coercive effect of Mr. McCarthy's desire to avoid representing Griffin at trial.

Moreover, the caselaw in this circuit cuts against Griffin's claim that his voluntariness is a close question. As the Court noted in denying the motion to withdraw the guilty plea, Griffin identified "no comparable case in which a district court allowed a similarly situated defendant to withdraw a guilty plea." (Doc. #117 at 30). This is not a situation in which the Court came down on one side of a clear divide. Instead, it decided Griffin's voluntariness was demonstrated by the weight of the entire record before it, and Griffin produced no persuasive authority showing that other courts have reached different conclusions in similar circumstances. Because the record demonstrates Griffin's guilty plea was voluntary, he has not identified a substantial question of law or fact warranting bail pending appeal. United States v. Jaata, 2022 WL 1443945, at *9 (S.D.N.Y. May 5, 2022).

Finally, and importantly, the Court is cognizant of the applicable standard of review Griffin will face on appeal—even though Griffin ignores this subject. The Second Circuit "review[s] a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and any findings of fact in connection with that decision for clear error." United States v. Rivernider, 828 F.3d 91, 104 (2d Cir. 2016). To the extent Griffin argues the Court incorrectly credited Mr. McCarthy's and Ms. Hughes's testimony over his, he challenges a factual finding—with respect to which the Court is entitled to exercise its discretion absent clear error. See United States v. Iodice, 525 F.3d 179, 185 (2d Cir. 2008) ("When, as here, credibility determinations are at issue, we give particularly strong deference to a district court finding.").

Accordingly, neither Griffin's voluntariness in pleading guilty, nor his assertion that his plea lacked a sufficient factual basis, creates a substantial question of law or fact warranting bail pending appeal.

C.   Ineffective Assistance of Counsel

In contending Mr. McCarthy provided ineffective assistance, Griffin again repeats arguments the Court has already considered and rejected. He fares no better in arguing these assertions create substantial questions of law or fact.

First, Mr. McCarthy did not improperly ignore legal arguments that could have strengthened Griffin's bargaining position against the government. Griffin's argument on this point references his prior claim that Mr. McCarthy should have examined the legal strength of an 18 U.S.C. § 1028A aggravated identity theft charge included in the indictment against Griffin. As he did in litigating his motion to withdraw, Griffin conveniently ignores the fact that he did <u>not</u> plead guilty to violating Section 1028A. Moreover, Mr. McCarthy testified he considered the issue enough to inform Griffin they could present a potentially winning defense to the Section 1028A charge at trial, but that would not change the overwhelming evidence Griffin faced on the other counts. The Court found that testimony credible. In short, Mr. McCarthy was not constitutionally ineffective in considering the Section 1028A charge within the context of Griffin's overall defense.

Second, Mr. McCarthy did not fail to investigate factual leads. Here, Griffin refers to his claim that Mr. McCarthy failed to pursue leads that would undermine the testimony of Dena Burke, a government witness who would likely testify against Griffin at trial. Again, the Court previously determined "the evidentiary record demonstrates Mr. McCarthy diligently investigated Dena Burke's flaws as a government witness well in advance" of the change of plea

9

hearing before Judge Reznik. (Doc. #117 at 33). That evidence included Mr. McCarthy's credible testimony and records documenting multiple defense interviews with Ms. Burke that took place months, if not over a year, before Griffin pleaded guilty.

Third, for the reasons discussed above, Mr. McCarthy did not unconstitutionally pressure Griffin to plead guilty. In fact, Mr. McCarthy and Ms. Hughes devoted a great deal of time to preparing Griffin in the weeks leading up to his change of plea hearing. The Court already found Mr. McCarthy and Ms. Hughes to be particularly credible in describing their lengthy discussions with Griffin regarding a potential guilty plea, and their testimony was further corroborated by Mr. McCarthy's billing records from this period. Specifically, Mr. McCarthy told Griffin multiple times that only he (Griffin) could decide whether to plead guilty or proceed to trial. Contrary to his assertions, Griffin received attentive and diligent counsel as he decided whether or not to plead guilty.

Finally, Griffin contends Mr. McCarthy failed to exercise "due diligence" when negotiating the loss amount stipulation included in the plea agreement, but this argument fares no better. (Doc. #163 at 18). As the government points out, Griffin does not specify what such due diligence would have entailed. He therefore has not met his burden of persuasion on this point. United States v. Randell, 761 F.2d at 125. Regardless, the Court has already found that Mr. McCarthy provided competent counsel in all aspects of Griffin's decision to plead guilty—and that includes negotiating the plea agreement with the government. As Mr. McCarthy testified at the evidentiary hearing, the government agreed to drop the aggravated identity theft charge— which carried a mandatory minimum sentence of two years' imprisonment—and forgo a superseding indictment with additional counts, if Griffin accepted its offer and pleaded guilty to the two conspiracy counts pursuant to the proposed plea agreement. It is far from ineffective for

10

a defense attorney to agree to a large loss amount supported by numerous factual records (as discussed in greater detail below) in exchange for helping one's client avoid a possible mandatory prison sentence as well as new substantive charges.

    D.    <u>Loss and Restitution Amounts</u>

As the government emphasizes, the appellate waiver contained in Griffin's plea agreement bars him from challenging his sentence on appeal. As such, the "Court need not consider whether there is a 'close' question, as [Griffin], through his plea agreement, foreclosed the raising of any question on this subject." <u>United States v. Lisi</u>, 2020 WL 417791, at *2 (S.D.N.Y. Jan. 27, 2020).

Nevertheless, in the unlikely event the Second Circuit decides to look past the appellate waiver and examine this argument, Griffin still does not raise a substantial question of law or fact vis-à-vis his sentence. Here, Griffin focuses on the $1.2 million loss amount to the Town of Cortlandt for purposes of calculating the applicable sentencing guidelines range, and the $2.4 restitution figure ($1.2 million to be paid to the Westchester Land Trust and $1.2 million to be paid to the Town), to which the parties stipulated in their plea agreement. The Court adopted those agreed-upon amounts at sentencing after reviewing, as required by the Second Circuit, "the record as a whole, including the affirmation by the defendant of the accuracy of the plea agreement and any other evidence before the court." <u>United States v. Granik</u>, 386 F.3d 404, 411 (2d Cir. 2004).

Griffin contends the Court should have looked past his loss and restitution stipulation because it was infected with the ineffective assistance provided by Mr. McCarthy, but that argument rests on a false premise. As discussed above, Mr. McCarthy was not ineffective. Griffin's attempt to circumvent the stipulation therefore relies on a position the Court has already

rejected on multiple occasions. There is simply no reason to doubt the validity of the stipulated loss and restitution amounts contained in a plea agreement into which Griffin knowingly and voluntarily entered.

Moreover, the record as a whole, in addition to the parties' clear and explicit factual stipulation, included substantial factual evidence supporting the $1.2 million loss amount for sentencing guidelines purposes and the $2.4 million restitution amount, such as, for example, (i) photographs of trucks operated by Griffin's company dumping construction and demolition debris at the Arlo Lane facility, (ii) Griffin's admission that his company dumped 302 truckloads of materials at Arlo Lane, (iii) photographs of Town employees moving materials toward the nature preserve managed by the neighboring landowner, the Westchester Land Trust, (iv) photographs taken by Westchester Land Trust staff showing unlawfully dumped materials on the Trust's wetlands, (v) a victim impact statement submitted prior to sentencing by the Town of Cortlandt, including an estimate that it would cost the Town approximately $2.8 million to remove the stockpile of illegally-dumped materials, which an attorney for the Town elaborated upon at the sentencing hearing, (vi) a victim impact statement submitted prior to sentencing by the Westchester Land Trust, including an estimate that it would cost approximately $2.4 million to remediate the damage to the Trust's property, and (vii) the pre-sentence investigation report prepared by the Probation Department. Griffin contests the accuracy of that evidence, but he simply rehashes assertions the Court examined and rejected at sentencing. The Court declines to revisit those arguments again, and none creates a close question of law or fact.

Finally, Griffin once again fails to address the standard of review on appeal, which creates another obstacle for him. "The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence," meaning the district court's "loss

determination is entitled to appropriate deference" on appeal.  United States v. Norman, 776 F.3d 67, 79 (2d Cir. 2015).  Griffin identifies no authority demonstrating that the Court's use of its factfinding discretion at sentencing constitutes a close question warranting bail pending appeal—assuming the Second Circuit even reaches this issue.

At bottom, the Court based its loss and restitution determinations on the parties' stipulation, as well as the ample evidence in the record.  Therefore, its "loss calculation was not a close question or one that very well could be decided the other way."  United States v. Keita, 2022 WL 72299, at *3 (S.D.N.Y. Jan. 7, 2022).[3]

## CONCLUSION

The motion for a stay of surrender and bail pending appeal is DENIED.

Griffin's direct surrender date remains September 11, 2025.

The Clerk is instructed to terminate the motion.  (Doc. #161).

Dated: August 18, 2025
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[3]  The loss amount was certainly a factor the Court considered at sentencing, but the Court focused principally on the corrupt nature of Griffin's schemes as well as his individual history and characteristics.  All of this is reflected in the Court's substantial downward variance to 24 months' imprisonment from the applicable 37-46 month Guideline range.  Even if the calculation of loss was somehow inaccurate, it is extremely unlikely the Court would have imposed a different sentence.  See United States v. Mendlowitz, 2021 WL 4892860, at *8 (S.D.N.Y. Oct. 20, 2021).